UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN D. EASTERDAY,                          Case No. 15-13300

            Plaintiff,                          John Corbett O'Meara
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Stephanie Dawkins Davis
                                                United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On September 17, 2015, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

John Corbett O'Meara referred this matter to Magistrate Judge Michael

Hluchaniuk for the purpose of reviewing the Commissioner's decision denying

plaintiff's claims for a period of disability, disability insurance benefits and

supplemental security income. (Dkt. 2). This matter was reassigned to the

undersigned pursuant to Administrative Order on January 5, 2016. (*See* Text-only

Order of Reassignment). Both parties filed motions for summary judgment in this

case.  (Dkt. 11, 14).  Plaintiff also filed a reply brief in support of his motion.

(Dkt. 15).  This matter is now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability

insurance benefits on March 24, 2011, alleging disability beginning October 15,

2010.  (Dkt. 7-3, Pg ID 153).  Plaintiff's claims were initially denied by the

Commissioner on August 22, 2011.  *Id.*  Plaintiff requested a hearing and on June

11, 2012, plaintiff testified before Administrative Law Judge ("ALJ") Paul Jones,

who considered the case de novo.  (Dkt. 7-2, Pg ID 93-133).  In a decision dated

July 18, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 7-3, Pg ID 150-

161).  Plaintiff requested a review of this decision by the Appeals Council, which

remanded to the ALJ for further review.  (Dkt. 7-3, Pg ID 146-149).  The ALJ held

a second hearing on April 1, 2014.  (Dkt. 7-2, Pg ID 62-79).  In a decision dated

April 18, 2014, the ALJ again found that plaintiff was not disabled.  (Dkt. 7-2, Pg

ID 45-56).  Plaintiff again requested review, and the ALJ's decision became the

final decision of the Commissioner when the Appeals Council, on July 14, 2015,

after reviewing additional exhibits,[1] denied plaintiff's request for review.  (Dkt. 7-

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since

2, Pg ID 30-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** pursuant to Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1966 and was 44 years old on the alleged onset date. (Dkt. 7-2, Pg ID 54). Plaintiff had past relevant work as die maker, fork truck operator, and shipping clerk. *Id*. Plaintiff stopped working in October 2010 after a work-related back injury. *Id*. at Pg ID 50. The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged on-set date of October 15, 2010. *Id*. At step two, the ALJ found that plaintiff had the following severe impairment: spine disorder. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the

---

district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

regulations. *Id*. at Pg ID 51.

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as follows:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except he requires an at-will sit/stand option, provided he is not off task more than 10% of the work period; can occasionally climb ramps or stairs, balance, stoop, kneel and crawl; frequently crouch; and never climb ladders, ropes or scaffolds; avoiding concentrated exposure to extreme cold and to hazards, including the operational control of moving machinery and unprotected heights.

(Dkt. 7-2, Pg ID 51). At Step Four, the ALJ found that plaintiff could not perform his past relevant work. (Dkt. 7-2, Pg ID 54). At Step Five, the ALJ concluded that plaintiff, with his RFC, could perform jobs in significant numbers in the national economy and was therefore, not disabled. *Id*. at Pg ID 55.

## B.   Plaintiff's Claims of Error

According to plaintiff, the ALJ erred as a matter of law in failing to find that plaintiff's depression was a medically determinable impairment. Plaintiff acknowledges that only an "acceptable medical source" may opine as to the *existence* of a medically determinable impairment, 20 C.F.R. § 404.1513(a) and that a therapist is not an acceptable medical source. *Id*. However, plaintiff maintains that the ALJ ignored the fact that Dr. Daoud, a medical doctor, is an acceptable medical source, 20 C.F.R. § 404.1513(a)(1), and he also diagnosed

4

depression.  (Dkt. 7-7, Pg ID 488-489).  As a result, plaintiff contends that

depression was a medically determinable impairment.  Furthermore, the ALJ's

dismissal of therapist, Darryl Moore's findings, via his purportedly consistent

reports of normal mental status exams since July 2013, is not supported by

substantial evidence.  According to plaintiff, a review of Mr. Moore's notes and

findings makes it clear that plaintiff still had significant issues.  Mr. Moore noted

that plaintiff had dreams about hanging himself (Dkt. 7-7, Pg ID 522), was a

danger to himself and had suicidal ideation (Dkt. 7-7, Pg ID 512), and continued

to experience depression and stress (Dkt. 7-7, Pg ID 510), all after July 2013.  As a

result, plaintiff contends that the ALJ's analysis as to plaintiff's mental

impairments is both inconsistent with controlling law and unsupported by

substantial evidence.

     Additionally, plaintiff points out that if the record suggested a mental

impairment, the ALJ had an obligation to further investigate.  The regulations

specifically provide for the ordering of a consultative examination when there is

insufficient evidence to decide a claim.  20 C.F.R. § 404.1529(b).  When a mental

impairment is possible, it is the ALJ's duty to develop the record by ordering a

psychological examination if he believes the record otherwise lacks support for the

claimant's symptoms.  *Id*.  Consequently, plaintiff asserts that the ALJ erred in

finding that plaintiff had no medically determinable mental impairment, or in

further considering the nature and severity of that impairment. Plaintiff further argues that even if such an impairment were ultimately found to be non-severe, the disability analysis takes into account both severe and non-severe impairments. *Maziarz v. Sec'y of HHS*, 837 F2d 240, 244 (6th Cir. 1987). Yet, here there is no accounting for plaintiff's mental impairment in the ALJ's RFC assessment.

Plaintiff next argues the ALJ's RFC assessment is not supported by substantial evidence and is contrary to the Commissioner's own regulations and rulings. Plaintiff points out that the ALJ expressly says he is incorporating the limitations from the functional lifting testing performed on plaintiff, but does not actually incorporate the restriction limiting plaintiff to occasional sitting and standing. "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10; SSR 96-9p. As a result, plaintiff asserts that a sit-stand option will not account for limitations of both standing and sitting to occasional amounts, which presupposes that plaintiff could perform each activity for one-third of the workday. This, of course, would account for only two-thirds of the workday, not the entire day.

Plaintiff says that the ALJ alluded to this issue with respect to Dr. Lazoff's opinion, indicating that the doctor attempted to "clarify" his earlier opinion by indicating that plaintiff could not perform even sedentary work because he could only occasionally sit. (Dkt. 7-2, Pg ID 53). However, according to plaintiff,

6

the ALJ's further analysis simply incorporates the same error:

> ...an individual is not necessarily precluded from performing substantial gainful activity solely on the basis of his "occasional tolerance for sitting" as indicated by Dr. Olson.[2]  In the instant case, the adopted functional capacity finding accommodates an at-will option. Therefore, I give Dr. Lazoff's opinion that claimant 'would not qualify for even sedentary work' little weight.

(Dkt. 7-2, Pg ID 53).  However, plaintiff contends that a limitation of both sitting and standing to only occasionally is not accommodated by a sit-stand option, by virtue of the Commissioner's own definition of the word "occasional."  As a result, plaintiff maintains that further and reversible error has been committed.

Finally, plaintiff argues that this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g), for the consideration of new and material evidence significant to this claim.  In this case, evidence was submitted to the Appeals Council after the ALJ's most recent decision, indicating that plaintiff underwent a bilateral hemilaminectomy and decompression of the L5 nerve root, during which "quite severe" stenosis was removed.  (Dkt. 7-7, Pg ID 598-599). This operation took place on April 25, 2014, just seven days after the date of the ALJ's decision. As a result, plaintiff says the evidence clearly could not have been presented at the time of the hearing and was therefore "new."  And, plaintiff

---

[2]  The undersigned was unable to locate any records or opinions from "Dr. Olson" and neither party mentions this physician in their briefing.

asserts that this new evidence obviously demonstrates the severity of plaintiff's condition during the period preceding and leading up to the ALJ's decision, as required by such authorities as *Faucher v. Sec'y of HHS*, 17 F.3d 171, 175 (6th Cir. 1994), and is therefore "material." Furthermore, "[i]n order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health and Human Services*, 865 F.2d 709, 711 (6th. Cir 1988). According to plaintiff, the fact that plaintiff's condition was so severe as to require surgery, and that said surgery revealed "quite severe" stenosis, would likely have had a significant impact upon the ALJ's ultimate conclusion, and probably would have compelled a different result. Thus, plaintiff argues in the alternative that if this matter is not remanded for the reasons identified above, a "sentence six" remand is clearly appropriate for consideration of the new evidence of plaintiff's surgery.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

    The Commissioner contends that the ALJ properly concluded that plaintiff did not have a medically determinable mental impairment. "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" that satisfies the Agency's

durational requirement.  20 C.F.R. § 404.1505(a).  The Agency requires "evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment."  SSR 06-3p, 2006 WL 2329939 (2006).  Plaintiff asserts that Dr. Daoud, who is an acceptable medical source, "also diagnosed depression."  (Pl's Mem. 20, referring to Dkt. 7-7, Pg ID 488-489).  According to the Commissioner, that assertion does not accurately characterize the record.  To the contrary, Dr. Daoud sent plaintiff to Mr. Moore to be screened for depression. (Dkt. 7-7, Pg ID 563).  Significantly, plaintiff cites only two pages to support his assertion that Dr. Daoud diagnosed depression, and, according to the Commissioner, both of those pages are handwritten, apparently by at least two different people.  (Dkt. 7-7, Pg ID 488-489). Although these two pages appear to contain the word "depression," the Commissioner says it is unclear whether that word was even written by Dr. Daoud (or any other acceptable medical source), let alone that it is a diagnosis (as opposed to a notation about Mr. Moore's provisional diagnosis).

The Commissioner also points out that plaintiff does not even assert – let alone make any attempt to sustain his burden of establishing – that the error he alleges, caused him to suffer any prejudice.  The Commissioner maintains that plaintiff cannot sustain this burden for several reasons.  First, plaintiff repeatedly admitted that his alleged depression did not cause any functional limitations, let

9

alone any disabling limitations.  Second, the ALJ found that Mr. Moore

consistently reported that plaintiff had normal mental status exams (Dkt. 7-2, Pg

ID 51) and Mr. Moore consistently reported that Plaintiff had "unremarkable"

mood, affect, thought process, orientation, behavior, and functioning (Dkt. 7-7, Pg

ID 502, 504, 506, 508, 510, 512, 533).  Third, Mr. Moore's "[p]rovisional

diagnosis" of a single episode of depression is not particularly illuminating

because, as the Sixth Circuit has explained, "[t]he mere diagnosis of [a condition],

of course, says nothing about the severity of th[at] condition." *See Higgs v.

Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Fourth, plaintiff's assertion that the

ALJ had a "duty" to order a psychological examination because it was "possible"

that plaintiff had a mental impairment does not accurately characterize the law.

Rather, the general rule is that claimants bear the burden of producing evidence to

establish that they are disabled.  There is an exception to this rule "where there is

evidence which indicates the existence of a mental impairment," in which case a

determination that a claimant is not disabled "shall be made only if the

[Commissioner] has made every reasonable effort to ensure that a qualified

psychiatrist or psychologist has completed" certain forms. 42 U.S.C. § 421(h).  As

the Sixth Circuit explained in *Marcum v. Comm'r of Soc.*, 2000 WL 92262, at *4

(6th Cir. Jan. 18, 2000), this exception applies only if there is "significant

evidence of a possible mental impairment that allegedly prevented the claimant

10

from working."   The Commissioner asserts that, like the claimant in *Marcum,*
plaintiff here cannot sustain his burden of establishing the existence of such
evidence.  Fifth, plaintiff does not even assert – let alone make any attempt to
sustain his burden of establishing – that his alleged mental impairment caused any
specific, work-related functional limitations, whether disabling or otherwise.  For
these reasons, the Commissioner submits that remand is not warranted based on
the ALJ's finding that plaintiff did not have a medically determinable mental
impairment.

　　　The Commissioner also argues that the ALJ's RFC determination is
supported by substantial evidence.  In first supporting this argument, the
Commissioner engages in an extensive analysis of plaintiff's credibility and then
says that plaintiff's waives any argument against those findings by failing to
dispute them.  (Dkt. 14, Pg ID 660-663).

　　　Next, the Commissioner says that by making two checkmarks on the IPT
Form, Mr. Leslie indicated that plaintiff could only occasionally sit and stand.
(Dkt. 7-7, Pg ID 425).  According to the Commissioner, plaintiff's sole challenge
to the RFC finding is that the ALJ incorrectly stated that he incorporated these
checkmarks into the RFC finding.  The Commissioner acknowledges that the ALJ
could have expressed himself more clearly, what he plainly meant was that the
RFC finding incorporates the checkmark by which Mr. Leslie indicated that

11

plaintiff was able to perform sedentary work.  The Commissioner maintains that

the ALJ recited Mr. Leslie's checkmark conclusion that "Plaintiff met the criteria

for work at the sedentary D[ictionary of] O[ccupational] T[itles] physical demand

level," then stated in the very next sentence that "*[t]hese limitations* were

incorporated into the above residual functional capacity finding" (Dkt. 7-2, Pg ID

53 [emphasis added]).  That statement, according to the Commissioner, is correct.

*See* Dkt. 7-2, Pg ID 51 (restriction in RFC finding limiting plaintiff to a subset of

sedentary work).  The ALJ squarely rejected the checkmarks by which Mr. Leslie

indicated that plaintiff could only occasionally sit and stand.  And, Dr. Lazoff

stated that he "listed [Mr. Leslie's] restrictions and limitations" in his own

opinion.  (Dkt. 7-7, Pg ID 451, referring to Dkt. 7-7, Pg ID 427).  More

specifically, Dr. Lazoff listed – by making two checkmarks on the PWR Form –

Mr. Leslie's checkmarks indicating that plaintiff could only occasionally sit or

stand.  (Dkt. 7-7, Pg ID 427).  According to the Commissioner, the ALJ explicitly

addressed those checkmarks, then explicitly found that they were "not supported

by the medical records" (Dkt. 7-2, Pg ID 53).  Although it was unnecessary to

reach this issue, the ALJ also correctly stated that Dr. Lazoff was mistaken when

he indicated that people limited to occasional sitting can not perform sedentary

work (Dkt. 7-2, Pg ID 53, referring to Dkt. 7-7, Pg ID 451).  Indeed, a vocational

expert in this case explicitly testified that such people can perform sedentary work,

12

provided they can stand when they are not sitting.  (Dkt. 7-2, Pg ID 130-131).

The Commissioner also asserts that checklist forms such as the ones that Mr. Leslie and Dr. Lazoff completed are not entitled to significant weight.  Indeed, the Tenth Circuit states that checklist forms like the ones that Mr. Leslie and Dr. Lazoff completed "are not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  The Commissioner points out that plaintiff admitted that he could sit "for an hour or so" at a time (Dkt. 7-2, Pg ID 109), and the ALJ gave plaintiff the benefit of the doubt by including an "at-will sit/stand option" in the RFC finding.  (Dkt. 7-2, Pg ID 51).  The Commissioner says that the ALJ correctly states (Dkt. 7-2, Pg ID 53), plaintiff's wife complained to Dr. Lazoff that his opinion was "messing with" plaintiff's ability to obtain disability benefits (Dkt. 7-7, Pg ID 452) and Dr. Lazoff responded by "clarif[ying]" his opinion (Dkt. 7-7, Pg ID 451).  And, although the ALJ rejected the checkmarks indicating that plaintiff could only occasionally stand (Dkt. 7-2, Pg ID 53), he gave plaintiff the benefit of the doubt by limiting plaintiff to a restricted range of sedentary work.  (Dkt. 7-2, Pg ID 51).  According to the Commissioner, such work requires – at most – only occasional standing.  *See* SSR 83-10, 1093 WL 31251, at *5. Moreover, although plaintiff characterizes the IPT Form as a "functional capacity evaluation ['FCE']", the ALJ accurately quoted Mr. Leslie's disclaimer that the IPT Form he completed "was not an FCE" but was, instead, a "modified lifting capabilities test." (Dkt. 7-2,

Pg ID 52, referring to Dkt. 7-7, Pg ID 425).  According to the Commissioner, nothing in the IPT Form suggests that Mr. Leslie actually evaluated plaintiff's ability to occasionally sit or stand (i.e., for up to a third of an eight hour day); to the contrary, his entire examination lasted only one and a half hours.  (Dkt. 7-7, Pg ID 422).  For these reasons, the Commissioner respectfully submits that substantial evidence supports the RFC finding.

Finally, the Commissioner maintains that remand is not warranted or required for the agency to consider the surgery report.  The decision was issued on April 18, 2014.  (Dkt. 7-2, Pg ID 56).  Only four business days elapsed between that date and the date of the surgery described in the Surgery Report.  (Dkt. 7-7, Pg ID 598).  Accordingly, the Commissioner asserts that although plaintiff obviously made the decision to have that surgery well before the ALJ issued the decision, plaintiff's counsel failed to convey that fact to the ALJ, and failed to ask the ALJ to hold the record open to receive either an affidavit attesting to that fact or a copy of the surgery report.  As the Sixth Circuit has declared, these failures – standing alone – preclude plaintiff from sustaining his burden of establishing "good cause." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir 2007) ("[P]laintiff's counsel did not seek to have the record remain open to submit the evidence here provided, which in and of itself shows a lack of good cause.").

The Commissioner also argues that plaintiff fails to satisfy the other

14

Sentence Six requirements.  Specifically, the only significance that plaintiff ascribes to the surgery report is that it "demonstrates the severity of [his] condition during the period prior to and leading up to the ALJ's decision."  In other words, the surgery report is significant because it reflects the surgery decision.  Although the surgery report may be "new" within the meaning of *Foster*, the Commissioner says that the decision to have surgery plainly is not.  And, while plaintiff asserts that the surgery report is "material" because it "would likely have had a significant impact on the ALJ's ultimate conclusion, and probably would have compelled a different result," the Commissioner asserts that this argument fails to account for the fact that the Appeals Council explicitly considered the surgery report and found that it "does not provide a basis for changing the Administrative Law Judge's decision." (Dkt. 7-2, Pg ID 31).  For these reasons, the Commissioner submits that remand is not warranted to require the Agency to consider the surgery report.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

16

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

17

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

18

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

19

substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

1.    Mental impairment

Even if the ALJ erred by failing to find that plaintiff's claimed mental impairment was "severe," the omission of an impairment from the step two findings would not warrant remand because the ALJ found that plaintiff had at least one impairment that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis. *See Maziarz v. Sec'y of Health*

21

& *Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the step two analysis).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").  Notably, plaintiff points to no medical opinions in the record or other evidence suggesting that his alleged mental impairment limited him in any way or imposed any work-related limitations. Therefore, any error was harmless.  *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11, 2016) (While the plaintiff pointed to evidence that he was diagnosed as morbidly obese, the court concluded that this evidence did nothing to demonstrate that his obesity imposed any additional work-related limitations, and therefore, even if the court assumed that the ALJ erred in failing to find that the plaintiff's obesity constituted a severe impairment, the error did not call into question the substantiality of the evidence supporting the ALJ's decision.).  Plaintiff's arguments citing Dr. Daoud's diagnosis of depression and the therapists notations of abnormal findings are unavailing as the mere

22

existence of a diagnosis not suggest functional limitations.  Indeed, plaintiff bears the burden of proof at step two and has not come forward with any evidence of mental impairment that is more than a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Based on the foregoing, the undersigned finds no reversible error regarding the ALJ's conclusion that plaintiff did not have a medically determinable mental impairment.

   2. RFC

  The parties sharply disagree as to whether there is substantial evidence in the record to support the ALJ's conclusion that plaintiff could perform sedentary work, particularly as it relates to the sitting requirements for sedentary work.  A "sedentary" range is generally associated with sitting for about six hours in an eight-hour workday.  *Sorrell v. Comm'r of Soc. Sec.*, — Fed. Appx. — ; 2016 WL 4245467, 8* (6th Cir. 2016) (citing SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (noting that in a sedentary range "[s]itting would generally total about 6 hours of an 8-hour workday"); *see also Mager v. Comm'r of Soc. Sec.*, 145 F.3d 1332, at *2 n.2 (6th Cir. 1998) (table).  The primary question before the Court is whether the ALJ's conclusion that plaintiff could perform sedentary work, which requires sitting for up to six hours per day, is supported by substantial evidence.  Answering this question requires a review of the all of the medical

opinions in this case, treating and consulting.  The ALJ's decision on this point is

somewhat confusing.  He relies on the modified lifting capabilities test results and

states that "[t]hese limitations were incorporated into the above residual functional

capacity finding."  (Dkt. 7-2, Pg ID 53).  As plaintiff points out, the problem is

that while the person conducting the testing concluded that plaintiff could perform

sedentary work, he also concluded that plaintiff could only "occasionally" sit,

which means only up to 1/3 of the day.  This is significantly less than the six hours

per day of sitting required to fit the definition for sedentary work.

    The ALJ does not persuasively explain why he essentially accepted all the

specific limitations reached in the modified lifting capabilities test *except* for the

conclusion that plaintiff could only sit occasionally.  Indeed, the ALJ rejected the

opinions of Dr. Shugart in favor of the conclusions reached in the modified lifting

capabilities test.  (Dkt. 7-2, Pg ID 53).  The ALJ also does not convincingly

explain why he rejected the opinions of Dr. Lazoff regarding plaintiff's ability to

only sit "occasionally" which is also entirely consistent with the modified lifting

capabilities test.  While the ALJ finds fault with Dr. Lazoff's attempt to "clarify"

his opinion based on plaintiff's wife's statement that his assessment was "messing

with his disability and SSD," Dr. Lazoff merely referred back to a May 2011

opinion, in which he opined that plaintiff could only sit "occasionally."  (Dkt. 7-2,

Pg ID 53).  Again, the limitation of occasional sitting is entirely consistent with

24

(1) the modified lifting capabilities test, (2) Dr. Lazoff's 2012 opinion which refers to that test, (3) Dr. Lazoff's clarifying letter in which he explained that his earlier conclusions actually meant that plaintiff could not perform sedentary work, and (4) Dr. Lazoff's 2011 opinion, which was issued long before plaintiff's wife's statement that the ALJ found to be troubling. (Dkt. 7-7, Pg ID 439-442; 451; 443). Despite the ALJ's characterization that Dr. Lazoff, in an apparent attempt to appease plaintiff and his wife, and based solely on sympathy, changed his opinion, that does not appear to be the case at all. Rather, it appears that Dr. Lazoff did not initially realize that with an occasional sitting limitation (which he had put in place in May 2011), plaintiff would not, in fact, be able to perform sedentary work as defined by the SSA, despite that conclusion being reached by himself and in the modified lifting capabilities test results.

The Commissioner asserts that the ALJ also correctly stated that Dr. Lazoff was mistaken when he indicated that people limited to occasional sitting cannot perform sedentary work. (Dkt. 7-2, Pg ID 53, referring to Dkt. 7-7, Pg ID 451). In the view of the undersigned, this contention is plainly contradicted by SSR 96-9p. In support of this contention, the Commissioner asserts that the vocational expert in this case explicitly testified that people who can occasionally sit can perform sedentary work, provided they can stand when they are not sitting. (Dkt. 7-2, Pg ID 130-131). The Commissioner is not correct. Rather, the VE testified that if

someone was only able to sit one-third of the day, the sedentary jobs she had discussed would be eliminated, unless the person could stand and perform their job for five hours per day.  (Dkt. 7-2, Pg ID 130-131).  This does not help the Commissioner's argument because here, in concluding that plaintiff could only perform sedentary work, the ALJ expressly concluded that plaintiff could only stand *occasionally*, which is no more than one-third of the day, *not* five hours per day. *See* SSR 96-9P (S.S.A. July 2, 1996) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.").  Based on the internal inconsistencies in the ALJ's decision, which appear to be the basis for rejecting Dr. Lazoff's opinion that plaintiff could only sit "occasionally," a remand is necessary and appropriate so the ALJ can reconsider Dr. Lazoff's opinion and plaintiff's RFC.  (*See* Dkt. 7-2, Pg ID 53).  Moreover, given the passage of time since Dr. Kondapaneni's August 22, 2011 opinion and the subsequent medical evidence in the record, the ALJ should also consider obtaining an updated opinion from a medical advisor regarding plaintiff's functional limitations.  *See e.g.*, *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008);  *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011).

26

3.    Sentence Six

Given that remand is recommended under Sentence Four, the undersigned finds it unnecessary to address plaintiff's alternative Sentence Six argument.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

27

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 19, 2016                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 19, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov